| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY | |
|---|---|
| Caption in Compliance with D.N.J. LBR 9004-1(b) | |
| **HUSCH BLACKWELL LLP** Rebecca R. Starner (NJ I.D. #304872019) 1801 Pennsylvania Ave., NW, Suite 1000 Washington, DC 20006 Telephone: 202.378.2300 Email: Rebecca.Starner@huschblackwell.com **HUSCH BLACKWELL LLP** Caleb T. Holzaepfel (admitted *pro hac vice*) 736 Georgia Avenue, Suite 300 Chattanooga, Tennessee 37402 Telephone: 423.755.2654 Email: Caleb.Holzaepfel@huschblackwell.com *Attorneys for Bayer HealthCare, LLC* | |
| In re: RITE AID CORPORATION, *et al.*,[1] Reorganized Debtors. | Chapter 11 Case No. 23-18993 (MBK) (Jointly Administered) |
| Thomas A. Pitta, as Trustee of the RAD Sub-Trust A, Plaintiff, v. Bayer Healthcare, LLC, Defendant. | Adv. Proc. No. 25-ap-1487 (MBK) |

## BAYER HEALTHCARE LLC'S MOTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6) TO DISMISS TRUSTEE'S COMPLAINT TO AVOID AND RECOVER TRANSFERS AND TO DISALLOW CLAIMS

---

[1] The last four digits of Debtor Rite Aid Corporation's tax identification number are 4034. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/RiteAid. The location of Debtor Rite Aid Corporation's principal place of business and the Debtors' service address in these chapter 11 cases is 1200 Intrepid Avenue, 2nd Floor, Philadelphia, Pennsylvania 19112.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES .............................................................................................. 3

Preliminary Statement ............................................................................................................ 5

Background ................................................................................................................................ 6

    A.    Bayer's Commercial Relationship with Rite Aid. .................................................. 6

    B.    The 2023 Rite Aid Bankruptcy Cases. ................................................................... 9

    C.    The Period Between the 2023 Plan Effective Date and the 2025 Rite Aid
          Bankruptcy Cases. ................................................................................................... 12

    D.    The 2025 Rite Aid Bankruptcy Cases. ................................................................. 13

    E.    The Bayer Complaint and Sale of Claims to RAD Sub-Trust A. ........................ 14

    F.    The Trustee's Voluntary Dismissal of the First Objecting Party Complaints and
          Refiling of the Same Complaints on October 15, 2025. ...................................... 16

Legal Standards ..................................................................................................................... 18

    A.    A Plaintiff Must Have Standing to Bring a Claim. .............................................. 18

    B.    Rule 12(b)(1) Mandates Dismissal When a Plaintiff Lacks Standing to Bring the
          Claims Asserted. ..................................................................................................... 18

    C.    Rule 12(b)(6) Requires Dismissal When the Plaintiff Has Failed to State a Claim
          Plausible Upon the Face of the Bayer Complaint. ............................................... 20

Argument .............................................................................................................................. 21

    A.    The Trustee Has Failed to, and Cannot, Establish Standing to Bring the
          Avoidance Claims Against Bayer Because the Sub-Trust A Did Not Own the
          Retained Claims When the Trustee Filed the Bayer Complaint. ......................... 21

          i.    The Avoidance Claims are Retained Claims. ............................................... 21

          ii.    Sub-Trust A Lacked Standing to File the Avoidance Claims Against Bayer
              on October 9, 2025. ....................................................................................... 22

    B.    Pursuant to Rule 12(b)(6), the Trustee Fails to State a Claim as the Bayer
          Complaint Fails to Assert Ownership of the Retained Claims.. ......................... 24

    C.    In Filing the Bayer Complaint Before Sub-Trust A Owned the Avoidance Claims,
          the Trustee Lacked Standing to Bring the Claims. .............................................. 25

    D.    In Summary, the Court Should Dismiss All of the Avoidance Claims With
          Prejudice for Lack of Article III Standing Pursuant to Rule 12(b)(1) and for
          Failure to State a Claim Pursuant to Rule 12(b)(6). ............................................ 26

Conclusion ............................................................................................................................ 28

## TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 20

*Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*,
   81 F.4th 279 (3d Cir. 2023) ................................................................................. 18

*Baldwin v. Univ. of Pittsburgh Med. Ctr.*,
   636 F.3d 69 (3d Cir. 2011) ................................................................................... 20

*Ballentine v. U.S.*,
   486 F.3d 806 (3d Cir. 2007) ............................................................................ 19, 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 20

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) ................................................................................. 20

*Constitution Party of Pa. v. Aichele*,
   757 F.3d 347 (3d Cir. 2014) ................................................................................. 19

*Friends of the Earth v. Laidlaw Env't Servs. (TOC)*,
   528 U.S. 167 (2000) ............................................................................................. 18

*Gould Elec. Inc. v. U.S.*,
   220 F.3d 169 (3d Cir. 2000) ............................................................................ 19, 27

*Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261 (3d Cir. 2016) .................................... 20, 27

*Hidalgo v. Johnson & Johnson Consumer Co., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015) ................................................................. 23

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
   549 F.2d 884 (3d Cir. 1977) ................................................................................. 19

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ............................................................................................... 18

*Pazymino v. Portfolio Recovery Assocs.*,
   Civ. No. 19-12259 (KM)(ESK), 2023 WL 7126446 (D.N.J. Oct. 30, 2023) ......................... 19

*Santiago v. Warminster Twp.*,
   629 F.3d 121 (3d Cir. 2010) ................................................................................. 20

*Taliaferro v. Darby Tp. Zoning Bd.*,
   458 F.3d 181 (3d Cir. 2006) ................................................................................. 26

*Trustee v. Emerson Radio Corp.*, (*In re Home Easy, Ltd.*),
   672 B.R. 595 (Bankr. D.N.J. 2025) ...................................................................... 19

*Uzuegbunam v. Preczewski*,
   592 U.S. 279 (2021) ................................................................................. 18, 23, 27

*Warth v. Seldin*,
    422 U.S. 490 (1975)..................................................................................................... 20

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)..................................................................................................... 23

**State Cases**

11 U.S.C. § 546(a)(1)(A) ........................................................................................ 16, 26

**Federal Statutes**

Fed. R. Civ. P. 12(b)(1)................................................................................................. 18

Fed. R. Civ. P. 12(b)(6)................................................................................................. 20

**Federal Rules**

U.S. Const art. III, § 2 .................................................................................................. 18

*[ Remainder of Page Left Intentionally Blank ]*

### Preliminary Statement[2]

This case should be dismissed because the Trustee lacked standing to bring the Bayer Complaint at the time it was filed. There is no cure for the Trustee's lack of standing—and this Court's lack of subject matter jurisdiction resulting from such deficiency.

Rite Aid's 2023 chapter 11 plan of reorganization assigned certain claims owned by the 2023 Debtors to a litigation trust, *except for* the following specific category of carved-out claims: "claims or Causes of Action (including Avoidance Actions) **against contractual counterparties, vendors, or other go-forward commercial counterparties with the Reorganized Debtors**." 2023 Plan Art. I.A.42 (emphasis added) (defined below as "Retained Claims").

As is typical with go-forward, reorganized debtors, the Retained Claims were preserved to protect Rite Aid's ongoing business relationships with contract counterparties and vendors, like Bayer. Indeed, Bayer's commercial partnership with Rite Aid began before the 2023 Cases and continued uninterrupted through the 2023 Cases, the reorganization, and into the 2025 Rite Aid Bankruptcy Cases.  The chapter 5 avoidance claims against Bayer are "Retained Claims."

Notwithstanding the Reorganized Debtors' ownership of the Retained Claims, the Trustee filed the Bayer Complaint on October 9, 2025. The statute of limitations for all avoidance actions brought in the Bayer Complaint was set to expire on October 15, 2025. At some point, either the Trustee or the Reorganized Debtors realized the Trustee's mistake—the Sub-Trust A did not actually own all the claims it had just filed suit upon. What followed was a slap-dash, eleventh hour sale of the Retained Claims from the Reorganized Debtors to the Sub-Trust A. On October 10, 2025, the Reorganized Debtors filed a sale motion seeking to sell the Retained Claims to the

---

[2] Capitalized terms used but not defined in this Preliminary Statement are defined elsewhere in this Motion. The term "Reorganized Debtors" shall refer to the Reorganized Debtors under the 2023 Plan.

Sub-Trust A—requesting an emergency hearing for October 14, 2025. The sale of Retained Claims to the Sub-Trust A was approved on October 15, 2025, the day the avoidance actions expired.

Despite (and perhaps because of) the flash sale of Retained Claims, a blunder was made – a mess of the Trustee and Reorganized Debtors' own making. The sale of Retained Claims on October 15, 2025, could not confer standing to the Trustee *retroactively* to October 9, 2025 – the date of the filing of the Bayer Complaint. Controlling Supreme Court precedent requires courts to evaluate standing as of the time of filing. Because the Sub Trust A did not own the Retained Claims on October 9, 2025, the Trustee lacked standing to bring the Bayer Complaint. Because the Trustee lacked standing when he filed the Bayer Complaint, this Court lacks subject matter jurisdiction over this Adversary Proceeding.

Rule 12(b)(1) mandates dismissal of the Adversary Proceeding for lack of subject matter jurisdiction. The face of the Bayer Complaint also fails to establish the Sub-Trust A's ownership of the Avoidance Claims the Trustee asserts and Rule 12(b)(6) also mandates dismissal. Because the statute of limitations has expired, dismissal should be with prejudice to re-filing.

<u>**Background**</u>

**A.     Bayer's Commercial Relationship with Rite Aid.**

1.      In support of this Motion, Bayer HealthCare LLC ("<u>Bayer</u>" or "<u>Defendant</u>") submits the *Affidavit of Lynn Mihalko in Support of Bayer HealthCare LLC's Motion Pursuant to Fed. R. Civ. P. 12(b)(1) to Dismiss Trustee's Complaint to Avoid and Recover Transfers and to Disallow Claims* (the "<u>Mihalko Aff.</u>"), a copy of which is attached to this Motion as **Exhibit A**.

2.      In support of this Motion, Bayer further submits the *Affidavit of Joan Grieves in Support of Bayer HealthCare LLC's Motion Pursuant to Fed. R. Civ. P. 12(b)(1) to Dismiss Trustee's Complaint to Avoid and Recover Transfers and to Disallow Claims* (the "<u>Grieves Aff.</u>"), a copy of which is attached to this Motion as **Exhibit B**.

6

3.      Bayer, an indirect subsidiary of Bayer AG, develops and markets over the counter health products (the "Goods"). Greives Aff. ¶ 3; Mihalko Aff. ¶ 3.

4.      Bayer provided Goods to Debtors and Reorganized Debtors (collectively, "Rite Aid") at all relevant times for re-sale to its customers. Greives Aff. ¶ 4; Mihalko Aff. ¶ 4.

5.      Trustee himself asserts that Bayer was a "vendor or creditor that discovered and manufactured healthcare and medical products to or for the Debtors" of Rite Aid "at all relevant times." Compl. ¶ 15.

6.      Rite Aid purchased the Goods from Bayer on an invoice basis in exchange for monetary compensation. Mihalko Aff. ¶ 5. Rite Aid would submit electronic purchase orders (each a "Purchase Order") to Bayer through its electronic data interchange ("EDI") process. Mihalko Aff. ¶ 5. Following receipt of the EDI Purchase Order from Rite Aid, Bayer would produce an invoice (an "Invoice") tied to the Purchase Order and remit the ordered Goods to Rite Aid. Mihalko Aff. ¶ 5. The terms of the sale of Goods, including the purchase price and terms and conditions of Sale were included on the Invoice. Mihalko Aff. ¶ 5. Rite Aid was required to remit payment to Bayer on the Invoice terms (the "Payments"). Mihalko Aff. ¶ 5.

7.      From October 2021 through March 2025, Bayer delivered over 1,250 Invoices to Debtors based on Purchase Orders received. Mihalko Aff. ¶ 6. Excepting certain periods leading up to its 2023 bankruptcy filing and its 2025 bankruptcy filing, Rite Aid duly made payment on the Invoices to Bayer. Mihalko Aff. ¶ 6. Due to the voluminous number of Invoices, copies of certain sample Invoices are attached to the Mihalko Aff. as *Exhibit A-1*.

8.      Rite Aid and Bayer were also party to that certain Defense and Indemnity Agreement dated January 12, 2021 (the "Indemnity Agreement"). Greives Aff. ¶ 5. A copy of the Indemnity Agreement is attached to the Greives Affidavit as *Exhibit B-1*.

9.      Rite Aid and Bayer were party to that certain *Master Services Agreement* dated December 28, 2010 (the "Master Services Agreement"). Greives Aff. ¶ 8. A copy of the Master Services Agreement is attached to the Greives Affidavit as *Exhibit B-3*.

10.     Bayer provided Goods to the Rite Aid Corporation and its affiliates (*i.e.*, the pre-petition Debtors) prior to their filing for bankruptcy relief in 2023. Greives Aff. ¶ 6; Mihalko Aff. ¶ 7.

11.     On October 15, 2023 (the "2023 Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned Chapter 11 Cases (the "2023 Cases"). As of the 2023 Petition Date, the Debtors owed $352,577.29 to Bayer on open Invoices. Greives Aff. ¶ 6. On January 12, 2024, Bayer filed a proof of claim, assigned Claim Number 7819, for $352,577.29 (the "2023 Proof of Claim"). Greives Aff. ¶ 6. A copy of the 2023 Proof of Claim is attached to Greives Affidavit as *Exhibit B-2*.

12.     Bayer continued to sell Goods to the Debtors during the pendency of the 2023 Cases. Mihalko Aff. ¶ 8. As of August 19, 2024, Debtors had an open balance on unpaid post-petition Invoices in the total amount of $2,015,108.50. Greives Aff. ¶ 9. The Debtors paid this post-petition balance in the ordinary course of business, thereby mooting any cure issues. Greives Aff. ¶ 9.

13.     Bayer continued to sell Goods to the Reorganized Debtors following the effective date of the 2023 Plan, which occurred on August 30, 2024 (the "2023 Plan Effective Date"). Greives Aff. ¶ 10; Mihalko Aff. ¶ 9. The Reorganized Debtors (post-2025 filing referred to as the "Debtors") commenced new chapter 11 cases (the "2025 Cases") on May 5, 2025 (the "2025 Petition Date"). As of the 2025 Petition Date, the Reorganized Debtors owed $1,932,207.88 to Bayer under open Invoices for Goods sold. Greives Aff. ¶ 10. On June 23, 2025, Bayer filed proofs

of claim, assigned claim numbers 754 and 767 (the "2025 Proofs of Claim"), in the 2025 Cases.

Greives Aff. ¶ 10. Copies of the 2025 Proofs of Claim are attached to the Greives Affidavit as

*Exhibit B-4*.

14.    The 2025 Debtors rejected the Master Services Agreement on August 20, 2025

pursuant to the Bankruptcy Court's *Twentieth Order Approving the Rejection of Certain Executory*

*Contracts and/or Unexpired Leases and the Abandonment of Certain Personal Property, if any*

[2025 Case, Dkt. No. 1965] (the "Bayer Rejection Order").

15.    At no point in time, did Bayer terminate the parties' relationship. Mihalko Aff. ¶

10.

16.    At all relevant periods of time, that is until the 2025 Cases, Bayer sold Goods to

Rite Aid pursuant to the Parties' contract terms and in accordance with their long-term commercial

relationship. Greives Aff. ¶¶ 12-14; Mihalko Aff. ¶¶ 6, 11.

17.    At all relevant periods of time, Bayer was a vendor and go-forward commercial

counterparty to Rite Aid. Greives Aff. ¶ 13.

18.    A copy of the Invoice and Payment detail revealing the go-forward commercial

vendor and commercial counter-party relationship between Bayer and Rite Aid between October

2021 and April 2025 is attached to the Mihalko Aff. as *Exhibit A-2* (the "Transaction History").

The Transaction History demonstrates the fact that Rite Aid and Bayer enjoyed an uninterrupted

order, delivery, and payment history until the onset of the 2025 Cases (where Rite Aid ceased retail

operations).

**B.    The 2023 Rite Aid Bankruptcy Cases.**

19.    The Debtors commenced the 2023 Cases on October 15, 2023. On October 17,

2023, the Court entered an order [2023 Dkt. No. 122] jointly administering the 2023 Cases for

procedural and administrative purposes pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 1015(b).[3]

20.     On August 16, 2024, the Court entered an order [2023 Dkt. No. 4532] (the "2023 Confirmation Order") confirming the *Second Amended Joint Chapter 11 Plan of Reorganization of Rite Aid Corporation and Its Debtor Affiliates (With Further Modifications), dated August 16, 2024* [2023 Dkt. No. 4532-1] (the "2023 Plan") and all plan supplements, including the Master Trust Agreement [2023 Dkt. No. 4793, Ex. 1] (the "Trust Agreement").

21.     The 2023 Plan provided for the establishment of a general litigation trust and two litigation sub-trusts, which hold certain assets, including the Assigned Claims (defined below) under the 2023 Plan. As contemplated under the 2023 Rite Aid Plan, the Trust Agreement formed the establishment of the Master Trust and the two sub-trusts, including RAD Sub-Trust A (herein, the "Sub-Trust A"). *See* 2023 Plan Art. IV.I.; 2023 Dkt. No. 4454 – *Notice of Seventh Amended Plan Supplement*, Exhibit I (*Litigation Trust Agreement*), Exhibit L (*UCC/TCC Allocation Agreement*), Exhibit N (*Certain Tort Sub-Trust Information*); 2023 Case Dkt. No. 4793 – *Eleventh Amended Plan Supplement*, Exhibit H (*GUC Equity Trust Agreements*), Exhibit I (*Litigation Trust Agreement*), Exhibit L (*UCC/TCC Allocation Agreement*), Exhibit O (*Litigation Cooperation Agreement*). Thomas A. Pitta was subsequently appointed as the trustee of Sub-Trust A (the "Trustee"). *See* 2023 Plan Art. VII and 2023 Dkt. No. 3790 – *Notice of Fourth Amended Plan Supplement*. Exhibit I-1 (*Litigation Sub-Trust A Agreement*).

---

[3] Unless otherwise specified, all references to "2023 Dkt. No." shall refer to the docket of the lead 2023 Case, *In re Rite Aid Corporation*, Case No. 23-18993 (Bankr. D.N.J.), and references to "2025 Dkt. No." shall refer to the docket of the lead 2025 Case, *In re New Rite Aid, LLC*, Case No. 25-14861 (Bankr. D.N.J.).

22.     The 2023 Plan assigned to the Master Trust (with proceeds to the Sub-Trust A) certain claims designated as "Assigned Claims" pursuant to the 2023 Plan. 2023 Plan, Art. I.A.42. Specifically excluded from the definition of Assigned Claims are "claims or Causes of Action (including Avoidance Actions) against **contractual counterparties, vendors, or other go-forward commercial counterparties** with the Reorganized Debtors (other than indemnification claims against potential joint tortfeasors and Co-Defendants)." *Id.* (emphasis added) (these claims that the Reorganized Debtors retained are herein referred to as the "Retained Claims").

23.     The Retained Claims clause first appeared as part of the second amended 2023 Plan, as the result of the global settlement between the Reorganized Debtors, the Official Committee of Unsecured Creditors, and the Official Committee of Tort Claimants, among other parties. *See* 2023 Dkt. No. 2511. This settlement arose from a successful Court-ordered mediation. *See* 2023 Dkt. Nos. 1469, 1482, 2511, 3711, 3850, 3951, 4532-1.

24.     At all times, that is, prior to the 2023 Cases, during the pendency of the 2023 Cases, and after the 2023 Plan Effective Date, Bayer was a contractual counterparty, vendor, and go-forward commercial counterparty within the meaning of Article I.A.42 of the 2023 Plan with Rite Aid Hdqtrs. Corp. ("RAHC"),[4] in its capacity as both a prepetition entity and as debtor-in-possession (Case No. 23-18999), and also with the Reorganized Debtors following the 2023 Plan Effective Date. Greives Aff. ¶¶ 12-14; Mihalko Aff. ¶¶ 6, 11, *Exhibit A-2* (Transaction History).

25.     Moreover, the Reorganized Debtors' actions, as reflected in the 2023 Cases dockets and claims registers, are replete with evidence of the prepetition, post-petition, and post-

---

[4] Although Bayer was a contractual counterparty with RAHC only, Bayer transacted with several Rite Aid entities. For example, Bayer filed proofs of claim against RAHC and Rite Aid Corporation in the 2025 Cases, and the 2025 Debtors scheduled four claims on behalf of Bayer against each of Eckerd Corporation, Rite Aid of Maryland, Inc., The Bartell Drug Company, and Thrifty PayLess, Inc.

confirmation go-forward commercial relationship between Bayer and the Reorganized Debtors,

including without limitation the following:

a.  On December 2, 2023, RAHC filed its Schedule E/F [2023 Dkt. No. 977] listing Bayer as a creditor under Part 2, Claim No. 3.105 in the amount of $299,564.40.

b.  On December 2, 2023, RAHC filed its Statement of Financial Affairs [2023 Dkt. No. 977], and in response to Question 3 therein, listed prepetition payments totaling $12,006,068.36 to Bayer within 90 days of the Petition Date.

c.  On January 12, 2024, Bayer filed Proof of Claim No. 7819 (the "Bayer 2023 POC") in the 2023 Cases. The 2023 Debtors did not object to the Bayer 2023 POC, which became "Allowed" under the terms of the 2023 Plan, as discussed below. *See* 2023 Plan, Art. I.A.40 and IX.E. (2023 Dkt. No. 2681, 3420, 4526).

26.  Additionally, on April 9, 2024, May 14, 2024, and August 15, 2024, Rite Aid filed assumptions notices culminating in its final *Notice of Filing of Eighth Amended Plan Supplement* listing Bayer as an executory contract counterparty and assuming the Master Services Agreement. 2023 Dkt. Nos. 2681, 3420, 4526.

27.  The 2023 Plan Effective Date occurred on August 30, 2024, and the Reorganized Debtors emerged from chapter 11 with the assumed the Master Services Agreement. *See* 2023 Dkt. 4800. Indeed, on June 16, 2025, in its 2025 Cases, Rite Aid filed its *Schedule G* listing Bayer as a counterparty to an executory contract pursuant to the Master Services Agreement. 2023 Dkt. No. 1003, Schedule G, 2.375. That is, the Reorganized Debtors understood themselves to also be a contractual counterparty with Bayer prior to, during, and following the 2023 Plan Effective Date.

**C.    The Period Between the 2023 Plan Effective Date and the 2025 Rite Aid Bankruptcy Cases.**

28.  Following the 2023 Plan Effective Date, Bayer and the Reorganized Debtors continued their go-forward commercial and contractual counterparty relationship. Greives Aff. ¶ 10; Mihalko Aff. ¶ 9; Mihalko Aff. ¶ 11, *Exhibit A-2* (Transaction History). In fact, between

August 30, 2024 (the 2023 Case Effective Date), and May 5, 2025 (the 2025 Case Petition Date),

the Reorganized Debtors made over 55 EDI Purchase Orders and remitted payment(s) on all related

Invoices (excepting those Invoices due in the 45 days leading up to the 2025 Cases filing) in the

aggregate amount of $9,772,836.78 for Goods provided by Bayer. *See* Mihalko Aff. ¶ 11, *Exhibit*

*A-2* (Transaction History).

29.     As of May 5, 2025, the Reorganized Debtors owed $1,932,207.88 for Goods that

Bayer delivered to one or more of the Reorganized Debtors between August 30, 2024, and May 4,

2025. Greives Aff. ¶ 10, *Exhibit B-3* (2025 Case Proofs of Claim); Mihalko Aff. ¶¶ 11, Exhibit A-

2 (Transaction History).

30.     Moreover, the Reorganized Debtors continued to consider themselves a contractual

counterparty to Bayer. *See* 2023 Dkt. No. 2681, 3420, 4526 (Cure/Assumption Notices); 2023 Dkt.

No. 4526 (2023 Plan Supplement); 2025 Dkt. No. 1003 (Schedule G for Rite Aid Hdqtrs. Corp.

(listing the Master Services Agreement as a current executory contract)).

**D.     The 2025 Rite Aid Bankruptcy Cases.**

31.     On May 5, 2025 (the "2025 Petition Date"), New Rite Aid, LLC and its affiliated

debtors (the "2025 Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code, thereby commencing new chapter 11 cases (collectively, the "2025 Cases").

32.     The 2025 Debtors' actions during the 2025 Cases further demonstrate the go-

forward commercial relationship between Bayer and the Reorganized Debtors and the 2025

Debtors, including the following:

  a.     On June 16, 2025, the 2025 Debtors filed schedules [2025 Dkt. Nos. 908,
         994, 1002 and 1010] (the "2025 Schedules") for four debtors scheduling
         claims for Bayer in the aggregate amount of $1,846,928.32 as of the 2025
         Petition Date. *See* 2025 Schedules.

  b.     On June 23, 2025, Bayer filed Proof of Claim No. 754 against RAHC in the
         amount of $1,932,207.88, and Proof of Claim No. 767 against Rite Aid

Corporation in the amount of $1,932,207.88 (together, the "2025 Bayer POCs"). The 2025 Debtors have yet to object to either of Bayer's Proofs of Claim.

c.  On June 16, 2025, RAHC filed its Schedule G [2023 Dkt. No. 1003, *Schedule G,* 2.375] listing Bayer as a counterparty to an executory contract pursuant to the Master Services Agreement.

d.  On August 1, 2025, the 2025 Debtors filed their *Twentieth Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [2025 Dkt. No. 1762] (the "Twentieth Rejection Notice"), thereby providing notice to Bayer of their intent to reject the Master Services Agreement effective as of August 1, 2025. On August 20, 2025, the Court entered the Bayer Rejection Order [2025 Dkt. No. 1965] ordering rejection of the Master Services Agreement.

33.    **In sum, Bayer acted as a commercial counterparty and go-forward trade vendor to Rite Aid at all relevant time periods: (1) prior to the 2023 Petition Date, (2) during the pendency of the 2023 Cases, and (3) following the 2023 Plan Effective Date**. *See* Greives Aff. ¶¶ 12-14; Mihalko Aff. ¶¶ 6, 11, Exhibit A-2 (Transaction History).

**E.    The Bayer Complaint and Sale of Claims to RAD Sub-Trust A.**

34.    On October 9, 2025, the Trustee filed his *Complaint to Avoid and Recovery Transfers and to Disallow Claims* (the "Bayer Complaint") in Adversary Case No. 25-ap-1487 (MBK) (the "Adversary Proceeding") against Bayer to: (i) avoid and recover certain prepetition transfers pursuant to 11 U.S.C. §§ 547, 548 and 550; and (ii) disallow claims pursuant to 11 U.S.C. § 502 (the "Disallowance Claim"). *See generally* Compl. The Trustee seeks the following relief (collectively, the "Avoidance Claims"[5]): (i) avoidance of preference period transfers pursuant to

---

[5] The Disallowance Claim falls within the meaning of Retained Claims under the 2023 Plan because its merit depends on the merits of the Avoidance Claims; if the Avoidance Claims fail for lack of standing or any other reason, then the Trustee has no alternative or independent basis to seek disallowance of Bayer's claims against the bankruptcy estate because the Trustee has not pled that Bayer holds or owns any estate property other than the purported transfers he seeks to avoid. For ease of reference, all references in this Motion to "Avoidance Claims" necessarily include the Disallowance Claim.

11 U.S.C. § 547 as Count I; (ii) avoidance of fraudulent conveyances pursuant to 11 U.S.C.

§ 548(a)(1)(B) as Count II; (iii) recovery of avoided transfers pursuant to 11 U.S.C. § 550 as Count

III; and (iv) disallowance of all Bayer claims pursuant to 11 U.S.C. § 502(d) and (j) as Count IV.

Compl. at 9-12.

35.    The Bayer Complaint states that "[Bayer] was, at all relevant times, a vendor or

creditor that discovered and manufactured healthcare and medical products to or for the Debtors."

Compl. ¶ 15.

36.    On October 10, 2025, a day after the Trustee had already filed his Bayer Complaint,

the 2025 Debtors filed the *Debtors' Motion for Entry of an Order Approving the Sale of the

Retained Preference Claims to RAD Sub-Trust A, Pursuant to Section 363 of the Bankruptcy Code

and Granting Related Relief* [2025 Dkt. No. 2837] (the "Retained Claims Sale Motion") proposing

to sell the Retained Claims to Sub-Trust A for the consideration set forth in that certain *Purchase

and Sale Agreement* [2025 Dkt. No. 2841].

37.    As the impetus for the Retained Claims Sale Motion, the Trustee admits that:

> Excluded from the Assigned Claims are "claims or Causes of Action (including
> Avoidance Actions) against contractual counterparties, vendors, or other go-
> forward commercial counterparties with the Reorganized Debtors (other than
> indemnification claims against potential joint tortfeasors and Co- Defendants)." *See*
> 2023 Rite Aid Plan, Article I.A.42. "Assigned Claims". Consequently, certain
> claims arising under section 547 of the Bankruptcy Code were retained by the post-
> confirmation 2023 Debtors and are property of the Debtors' estates in these Chapter
> 11 Cases (the "Retained Preference Claims"). Pursuant to section 546(a)(1)(A) of
> the Bankruptcy Code, the statute of limitations on the Retained Preference Claims
> expires on October 15, 2025 (the "Limitations Period").

Retained Claims Sale Motion ¶ 13 (citations and definitions in original).

38.     On October 15, 2025, the Court entered its *Order Approving the Sale of the Retained Preference Claims to RAD Sub-Trust A, Pursuant to Section 363 of the Bankruptcy Code and Granting Related Relief* [2025 Dkt. No. 2878] (the "Retained Claims Sale Order").[6]

39.     Also on October 15, 2025, the deadline for the Debtors' estates to bring causes of action under sections 544, 545, 547, 548 and 553 expired. 11 U.S.C. § 546(a)(1)(A) ("An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after … 2 years after the entry of the order for relief.").

40.     The Trustee did not re-file the Bayer Complaint after filing the original Bayer Complaint. The Trust's standing (or lack thereof) to bring the Avoidance Claims is tied to the date of the Bayer Complaint, October 9, 2025.

**F.      The Trustee's Voluntary Dismissal of the First Objecting Party Complaints and Refiling of the Same Complaints on October 15, 2025.**

41.     On October 9, 2025, the Trustee filed his *Complaints to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. §§ 502* against Pepsi-Cola Bottling Company of New York, Inc., GNC Holdings, LLC, Canada Dry Delaware Valley Bottling Company, Canada Dry Potomac Corporation, Pepsi-Cola and National Brand Beverages, Ltd., Utz Quality Foods, LLC, Academy Fire Protection, Inc., and RoofConnect Logistics, Inc. (collectively, the "Objecting Parties") [2023 Dkt. Nos. 6133, 6293, 6294, 6596, 6764, 6765, 6843, and 7028] (collectively, the "First Objecting Party Complaints"), thereby commencing various adversary proceedings (the "Objecting Party APs"). Just like the Bayer Complaint, the Objecting Party Complaints include preference claims under section 547 of

---

[6] On November 12, 2025, Bayer filed a notice of appeal of the Retained Claims Sale Order (the "Appeal"). The Appeal was assigned Civil Action Number 25-CV-17413-RK and remains pending as of the time of this Motion.

the Bankruptcy Code, fraudulent conveyance claims under section 548 of the Bankruptcy Code, recovery claims under section 550 of the Bankruptcy Code, and disallowance claims under section 502 of the Bankruptcy Code. *See generally* First Objecting Party Compls.

42.    On October 14, 2025, counsel to the Objecting Parties appeared at a hearing on the Retained Claims Sale Motion in the 2025 Cases to object. *See* Transcript of Hearing (Oct. 14, 2025), at 11:13–27:8, attached hereto as **Exhibit C.** The Objecting Parties argued that the 2023 Plan was "delicately crafted" … and negotiated," that the Reorganized Debtors had "exclusive discretion" to bring avoidance claims in the First Objecting Party Complaints, and the Trustee is "without authority or standing" to bring those claims. *Id.* at 14:18–24.

43.    On October 15, 2025, after the Court entered the Retained Claims Sale Order, the Trustee filed his notices of voluntary dismissal for each of the Objecting Party Complaints. The Trustee then refiled his *Complaints to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. §§ 502* [2023 Dkt. No. 7093, 7094, 7095, 7096, 7101, 7102] (the "Second Objecting Party Complaints")[7], asserting the exact same four counts against each of the Objecting Parties. The First Objecting Party Complaints and the Second Objecting Party Complaints are identical in all respects outside of references to the sale of the "Retained Claims". *Compare, e.g.,* 2023 Dkt. No. 6596 *with* 2023 Dkt. No. 7096; *see also* additions to Dkt. No. 7096 ¶¶ 8, 11, 22, 23. The Objecting Parties are the only parties for which the Trustee withdrew his initially filed complaints and re-filed identical complaints after the Retained Claims Sale Order was issued. *See generally* 2023 Case Docket.

---

[7] Trustee also re-filed withdrew and then complaints against various apparent affiliates of Objecting Party Pepsi-Cola Bottling Company of New York, Inc., and Objecting Party Pepsi-Cola and National Brand Beverages, Ltd.

## Legal Standards

### A.    A Plaintiff Must Have Standing to Bring a Claim.

44.    The Constitution grants Article III courts the power to decide "Cases" or "Controversies." Art. III, § 2. And "[u]nder Article III, a case or controversy can exist only if a plaintiff has standing to sue." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 286 (3d Cir. 2023); *see also Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (citation and internal quotations omitted) (alterations in original) ("A proper case or controversy exists only when at least one plaintiff establish[es] that [she] ha[s] standing to sue.")..

45.    Standing is an "irreducible constitutional minimum" that requires a plaintiff to "establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct ... [and] (3) a remedy that is likely to redress that injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (citation and internal quotations omitted). The plaintiff bears the burden of showing these three elements, *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023), and likewise "must demonstrate standing separately for each form of relief sought," *Friends of the Earth v. Laidlaw Env't Servs. (TOC)*, 528 U.S. 167, 185 (2000).

46.    "[S]tanding is assessed 'at the time the action commences'"— that is, at the time the plaintiff brought the lawsuit. *Carney v. Adams*, 592 U.S. at 60 (quoting *Friends of the Earth*, 528 U.S. at 191).

### B.    Rule 12(b)(1) Mandates Dismissal When a Plaintiff Lacks Standing to Bring the Claims Asserted.

47.    Rule 12(b)(1) of the Federal Rule of Civil Procedure (the "Rules"), made applicable to this proceeding by Bankruptcy Rule 7012, provides that "a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing

is a jurisdictional matter." *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007). Under Rule

12(b)(1), a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a

claim. *Darby Tp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a

federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must

be dismissed."). Further, "[t]he Court must presume that it lacks jurisdiction unless the party

invoking jurisdiction establishes otherwise." *Pazymino v. Portfolio Recovery Assocs.,* Civ. No. 19-

12259(KM)(ESK), 2023 WL 7126446, at *2 (D.N.J. Oct. 30, 2023) (citations omitted).

48.     In evaluating a Rule 12(b)(1) motion, a court must first determine whether the

movant presents a facial or factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d

884, 891 (3d Cir. 1977). In reviewing a facial challenge, which contests the sufficiency of the

pleadings, "the court must only consider the allegations of the complaint and documents referenced

therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elec. Inc. v. U.S.*,

220 F.3d 169, 176 (3d Cir. 2000).

49.     A factual Rule 12(b)(1) challenge "attacks allegations underlying the assertion of

jurisdiction in the complaint, and it allows the defendant to present competing facts." *Trustee v.

Emerson Radio Corp.*, (*In re Home Easy, Ltd.*), 672 B.R. 595, 642 (Bankr. D.N.J. 2025) (*citing

Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). When analyzing a factual

challenge, "a court may weigh and consider evidence outside the pleadings." *Constitution Party

of Pa.*, 757 F.3d at 358 (internal quotation marks omitted). "[T]he plaintiff [has] the burden of

proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy

itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches

to [the] plaintiff's allegations ...." *Mortensen*, 549 F.2d at 891. "Therefore, a 12(b)(1) factual

challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6)

review." *In re Home Easy, Ltd*., 672 B.R. at 642 (*citing Hartig Drug Co. v. Senju Pharm. Co.*, 836

F.3d 261, 268 (3d Cir. 2016)).

50.     Further, in evaluating whether a complaint adequately pleads the elements of

standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion

to dismiss for failure to state a claim. *See Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin*, 422

U.S. 490, 501 (1975)) (*see also Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir.

2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure

to state a claim.").

**C.     Rule 12(b)(6) Requires Dismissal When the Plaintiff Has Failed to State a Claim Plausible Upon the Face of the Bayer Complaint.**

51.     Under Rule 12(b)(6), dismissal is appropriate at the pleadings stage when a plaintiff

fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). *See Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). To survive dismissal, a complaint must allege

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiffs must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Conclusory allegations

are "not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d

Cir. 2010). Drawing "on its judicial experience and common sense," the Court instead

"determine[s] whether the well-pleaded facts state a plausible claim for relief." *Burtch v. Milberg*

*Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011).

## Argument

**A.    The Trustee Has Failed to, and Cannot, Establish Standing to Bring the Avoidance Claims Against Bayer Because the Sub-Trust A Did Not Own the Retained Claims When the Trustee Filed the Bayer Complaint.**

52.    Pursuant to Rule 12(b)(1), Bayer presents a facial challenge and factual challenge to the Trustee's standing to bring the Avoidance Claims. The Trustee lacked standing to bring the Bayer Complaint – so the prerequisite of subject matter jurisdiction does not exist. For this reason, the Adversary Proceeding should be dismissed.

### i.    The Avoidance Claims are Retained Claims.

53.    The 2023 Plan defines Retained Claims as "claims or Causes of Action (including Avoidance Actions) against *contractual counterparties, vendors, or other go-forward commercial counterparties* with the Reorganized Debtors (other than indemnification claims against potential joint tortfeasors and Co-Defendants)." 2023 Plan Art. I.A.42 (emphasis added). The 2023 Plan describes Avoidance Actions as: "all avoidance, recovery, subordination, or other claims, Causes of Action, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, *including claims, Causes of Action, actions or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code* or under similar or related state or federal statutes and common Law, including fraudulent transfer Laws." 2023 Plan Art. I.A.48 (emphasis added).

54.    Bayer was a vendor and commercial counterparty of the Reorganized Debtors prior to the Petition Date, during the pendency of the 2023 Cases, and following the 2023 Plan Effective Date. *See* Greives Aff. ¶¶ 12-14; Mihalko Aff. ¶¶ 6, 11, *Exhibit A-2* (Transaction History). Moreover, at all points in time, Reorganized Debtors considered themselves a contractual counterparty to Bayer. *See* 2023 Dkt. Nos. 2681, 3420, 4526 (2023 Plan Supplement); 2025 Dkt.

No. 1003 (Schedule G for Rite Aid Hdqtrs. Corp. (listing the Master Services Agreement as a current executory contract)).

55.    Trustee himself admits that Bayer was a "vendor or creditor" of Reorganized Debtors "at all relevant times." Compl. ¶ 15.

56.    The Avoidance Claims brought by the Trustee against Bayer are claims pursuant to sections 502, 544, 547, 548, and 550 of the Bankruptcy Code—falling squarely within the definition of Retained Claims. *See id;* Bayer Complaint ¶¶ 1-2, 26-47.

57.    The factual consequences are clear: the Retained Claims, including the Avoidance Claims, belonged to the Reorganized Debtors upon the 2023 Plan Effective Date. The Court entered the Retained Claims Sale Order on October 15, 2025, six (6) days after the Trustee filed the Bayer Complaint on October 9, 2025. *See* Retained Claims Sale Order (dated October 15, 2025). That is, the Sub-Trust A *did not own* the Avoidance Claims on October 9, 2025. *See* Retained Claims Sale Order (dated October 15, 2025).

**ii.    Sub-Trust A Lacked Standing to File the Avoidance Claims Against Bayer on October 9, 2025.**

58.    It is well-settled that a "post-filing assignment of legal rights will not cure a prospective plaintiff's defective Article III standing." *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distribution Corp.*, 2012 WL 3638658, at *6, ft. 5 (D.N.J. June 14, 2012), *report and recommendation adopted*, 2012 WL 3638629 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom. In re Cent. Eur. Distribution Corp. Sec. Litig.*, 2012 WL 5465799 (D.N.J. Nov. 8, 2012).

59.    Upon these facts, the Trustee cannot prove any element of standing.

60.    **Injury in Fact.**  This Court need not look further than the first element of Article III standing.  The Trustee, as plaintiff, must show a concrete, particularized injury to Sub-Trust A

to establish standing. *See Hollingsworth* v. *Perry*, 570 U.S. at 704, and *Uzuegbunam v. Preczewski*, 592 U.S. at 285. The alleged injury must be "'distinct and palpable'…not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The Trustee falls well short of this mark. On October 9, 2025, the Reorganized Debtors, not Sub-Trust A, owned the Avoidance Claims. The Trustee had no derivative standing to bring the Avoidance Claims against Bayer on behalf of the Reorganized Debtors. Instead, the Trustee brought claims that Sub-Trust A *did not own*. *See generally* Bayer Complaint. Without ownership or a legal right to enforce the Avoidance Claims at the time of filing, Trustee had no legally protected interest in the purported injury and, thus, no injury in fact. *Hollingsworth*, at 704, and *Uzuegbunam v. Preczewski, 592 U.S. at 285.*

61.     **Traceability.**   As Trustee did not own the claims as of the filing of the Bayer Complaint, it necessarily follows that the alleged injury is not fairly traceable to Bayer's conduct. *See id.* A complaint must connect the defendant to "at least one" injured plaintiff to satisfy this element. *Hidalgo v. Johnson & Johnson Consumer Co., Inc.*, 148 F. Supp. 3d 285 (S.D.N.Y. 2015) (citation omitted). Any purported underlying injury caused by Bayer (which Bayer refutes) would have been as to the Reorganized Debtors (who are not party to this Adversary Proceeding), not to Sub-Trust A. *See id.*

62.     **Redressability.** Finally, the Trustee cannot show that a favorable decision is likely to redress an injury to the Sub-Trust A. *See id.* On October 9, 2025, any judgment would have redressed only the *Reorganized Debtors'* interest in the Avoidance Claims, **not** any interest of the Sub-Trust A because the Sub-Trust A had no ownership in such Avoidance Claims. The later Retained Claims Sale Order did not (and cannot) retroactively cure this standing deficiency because standing is determined at the time of the filing of the Bayer Complaint. *E.g.*, *Carney v. Adams*, 592 U.S. at 60.

63.     Dismissal for lack of standing when a party did not own a claim is consistent with ruling across all courts and jurisdictions.  For example, in a recent case, a liquidating trustee, as successor-in-interest by assignment to official committee of general unsecured creditors (the "Citadel UCC") filed derivate claims against a limited partnership debtor. *In re Citadel Watford City Disposal Partners, L.P.*, 603 B.R. 897, 904 (Bankr. D. Del. 2019). On a Rule 12(b)(1) motion, the Court dismissed the liquidating trustee's complaint for lack of Article III standing as the Citadel UCC did not have ownership of the claims asserted against defendants. *Id*. at 908-909; *see also In re Waterford Wedgwood USA, Inc.*, 529 B.R. 599, 605 (Bankr. S.D.N.Y. 2015) (dismissing certain claims brought by a Chapter 7 Trustee's because the estate did not own such causes of action); *Intell. Ventures I LLC v. AT & T Mobility, LLC,* 203 F. Supp. 3d 436, 446 (D. Del. 2016) (holding that a post-filing assignment did not cure a claimant's standing deficiency at the time of filing of the Complaint and such affected claim must be dismissed); *Ball v. Nationscredit Financial Services Corp.*, 207 B.R. 869, 873 (Bankr. N.D. Ill. 1997) (Debtor lacked standing at time she filed complaint, despite later exemption of claims and return of ownership, because claim belonged to Chapter 7 Trustee at time of complaint filing).

64.     The Trustee's lack of standing is definitive. The Avoidance Claims against Bayer are Retained Claims. Standing is established at the time of the filing of a complaint. The Sub Trust-A did not own Retained Claims when the Trustee filed the Bayer Complaint. Accordingly, the Bayer Complaint should be dismissed.

**B.      Pursuant to Rule 12(b)(6), the Trustee Fails to State a Claim as the Bayer Complaint Fails to Assert Ownership of the Retained Claims.**

65.     The Trustee fails to asset ownership of the Avoidance Claims in the Bayer Complaint.

66.     Regarding ownership of the Avoidance Claims, the Bayer Complaint only states that "Pursuant to paragraph 144 of the Confirmation Order and Article IV.E.3 of the Plan, the Litigation Trust Assets (as defined in the Plan), including all Assigned Claims under Chapter of the Bankruptcy Code, were transferred to the Trust." Bayer Complaint ¶ 11.

67.     The Bayer Complaint does not define the term "Assigned Claims." *See generally* Bayer Complaint.

68.     Despite admitting that Bayer was "at all relevant times a vendor or creditor" to Debtors, the Bayer Complaint does not address the Retained Claims—or address the carve-out of Retained Claims (carving out "vendors") from the 2023 Plan's definition of Assigned Claims. Bayer Complaint ¶ 12; 2023 Plan Art. I.A.42.

**C.     In Filing the Bayer Complaint Before Sub-Trust A Owned the Avoidance Claims, the Trustee Lacked Standing to Bring the Claims.**

69.     The Trustee's incurable standing deficiency is a mess of his and the Reorganized Debtors' own making. The Reorganized Debtors filed and ultimately confirmed the 2023 Plan, which reflected their decision to retain the Avoidance Claims against Bayer to preserve their commercial relationship, which began before the 2023 Cases and continued through confirmation of the 2023 Plan and into the 2025 Cases.

70.     The 2025 Debtors determined to discontinue their relationship with Bayer at the latest by August 1, 2025, when the 2025 Debtors filed the Twentieth Rejection Notice to reject the Master Services Agreement.

71.     However, the 2025 Debtors waited until October 10, 2025, a mere *five* days before the statutory deadline to bring avoidance actions to move the Court for authority to sell its Avoidance Action claims (as defined in the 2023 Plan) against Bayer to Sub-Trust A.

72.     On October 15, 2025, the Court entered the Retained Claims Sale Order, and on the same day, the statutory deadline to bring estate-owned avoidance actions expired. *See* 11 U.S.C. § 546(a)(1)(A).

73.     The Trustee did not refile the Bayer Complaint on October 15, 2025.

74.     The consequence of these actions are that the Avoidance Claims the Trustee now seeks to bring against Bayer have expired. The Trustee lacked standing on October 9, 2025. The Avoidance Claims expired on October 15, 2025. The law requires this Court to dismiss the Trustee's claims for lack of standing and this Adversary Proceeding for lack of subject matter jurisdiction, with prejudice to refiling. *See Taliaferro v. Darby Tp. Zoning Bd.*, 458 F.3d at 188.

75.     To be sure, the Trustee was not unaware of the possibility of dismissal for lack of standing. It is no coincidence that the Trustee re-filed nearly a dozen lawsuits against the Objecting Parties who revealed the Trustee's standing deficiencies in various existing actions to the Court and the Trustee at the hearing on the Retained Claims Sale Motion on October 14, 2025. *See* Tr. of Hr'g (Oct. 14, 2025), at 14:18–24. On October 15, 2025—the *one* day the Trustee could potentially establish standing to bring avoidance claims—the Trustee refiled the Second Objecting Party Complaints. Notably, the Trustee did ***not*** choose to refile his Complaint against Bayer on October 15, 2025.  The Trustee and 2025 Debtors must live with their strategic missteps. The Trustee failed to cure his standing deficiency, and the Avoidance Claims must now be dismissed under Rule 12(b)(1) and Rule 12(b)(6), with prejudice to refiling.

**D.     In Summary, the Court Should Dismiss the Bayer Complaint, that is, All of the Avoidance Claims With Prejudice for Lack of Article III Standing Pursuant to Rule 12(b)(1) and for Failure to State a Claim Pursuant to Rule 12(b)(6).**

76.     Whether under a factual Rule 12(b)(1) analysis, a facial Rule 12(b)(1) analysis, or a Rule 12(b)(6) analysis, the Trustee has failed to establish standing to bring the Avoidance Claims

on October 9, 2025, and he has failed to state ownership of the claims he asserts on the face of his Bayer Complaint.  The Trustee's claims should be dismissed.

77.     Under a factual Rule 12(b)(1) analysis, the Court may consider evidence outside the pleadings. *Gould Elec. Inc. v. U.S.*, 220 F.3d at 176. Bayer has presented significant and indisputable evidence with this Motion that the Avoidance Claims are Retained Claims. The Court's entry of its Retained Claims Sale Order six (6) days ***after*** the Trustee filed his Bayer Complaint did not cure the Trustee's deficient standing because standing is determined at the time of the filing of the Bayer Complaint. The Sub Trust-A could not bring a claim it did not own. The Bayer Complaint must be dismissed on these grounds.

78.     Even under a facial Rule 12(b)(1) or Rule 12(b)(6) analysis, limiting consideration to the pleadings, standing fails because Sub-Trust A did not own the Avoidance Claims on the date of the Bayer Complaint. The Trustee has plead nothing on the face of the Bayer Complaint to establish Sub-Trust A's ownership of the Avoidance Claims on October 9, 2025 – or explain how a defendant that the Trustee concedes is a "vendor" was not a Retained Claim specifically carved out from the 2023 Plan's definition of Assigned Claims.

79.     Standing is an "irreducible constitutional minimum," *Uzuegbunam v. Preczewski*, 592 U.S. at 285, and a prerequisite to this Court's Article III subject matter jurisdiction over the Avoidance Claims. *See Kauffman v. Dreyfus Fund,* 434 F.2d at 735. That is, standing is a "threshold issue that must be addressed". *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269 (3d Cir. 2016) (quoting *Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 n.16 (3d Cir. 2004)). Notwithstanding the Court's entry of the Retained Claims Sale Order, the Trustee's standing deficiency at the time of filing cannot simply be handwaved away. It is the incurable and fatal defect of the Bayer Complaint. As a result, the Federal Rules and binding Supreme Court

precedent require this Court to dismiss the Avoidance Claims for lack of subject matter jurisdiction under Rule 12(b)(1), and the Bayer Complaint likewise fails to state a claim for the reasons stated above, thus requiring dismissal under Rule 12(b)(6).

80.    The Trustee's strategic gambit to file the Bayer Complaint in order to preserve the status of limitations—before the Sub Trust-A owned the claims—has created an uncurable deficiency. The Bayer Complaint and the underlying Avoidance Claims should be dismissed with prejudice because the statute of limitations has long passed.

### Conclusion

81.    For the foregoing reasons, Bayer respectfully requests that the Court dismiss the Bayer Complaint in its entirety with prejudice—and close the Adversary Proceeding.

Dated: January 7, 2026                          Respectfully submitted,

*/s/ Rebecca R. Starner*
**HUSCH BLACKWELL LLP**
Rebecca R. Starner (NJ I.D. #304872019)
1801 Pennsylvania Ave., NW, Suite 1000
Washington, DC 20006
202.378.2300
Rebecca.Starner@huschblackwell.com

**HUSCH BLACKWELL LLP**
Caleb T. Holzaepfel (admitted *pro hac vice*)
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
423.755.2654
Caleb.Holzaepfel@huschblackwell.com